IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FREDERICK FORD, | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 18-166-TFM-MU |
| | : | |
| CYNTHIA STEWART, *et al.*, | : | |
|     Defendants. | : | |
| | : | |

## **REPORT AND RECOMMENDATION**

Plaintiff Frederick Ford, a prison inmate proceeding *pro se* and *in forma pauperis*, filed his complaint under 42 U.S.C. § 1983. (Doc. 9). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R) and is now before the undersigned on Defendants' Motion for Summary Judgment (Doc. 48). After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**, and that the claims asserted against Defendants be dismissed with prejudice.

**I.  Summary of Plaintiff's Allegations.**

Plaintiff Ford brings this suit against Warden Cynthia Stewart, Warden Phillip Mitchell, and Kimberly McCants for Eighth Amendment violations of deliberate indifference to a serious medical need and failure to protect.[1] (Doc. 9 at 5-6).

---

[1] Specifically, Plaintiff alleges that Defendant Stewart failed to transfer him from the segregation unit to the hospital ward on January 24, 2018, with knowledge that he had an unknown enemy in the prison and was suffering pain. (Doc. 9 at 5). He claims that Defendant McCants denied him evaluation by a doctor on March 28, 2018 and requested x-rays. (*Id.*). He further claims she is responsible for his infection due to her failure to place him in the hospital ward upon return from treatment at South Baldwin Hospital. (*Id.*). Plaintiff claims that Defendant Mitchell failed to provide a safe dorm environment at Holman, due to the lack of security posted in C-Dorm. (*Id.* at 5-6).

1

Plaintiff alleges that on January 16, 2018, he was stabbed six times by an unknown assailant, while he was sleeping, in C-Dorm of Homan Correctional Facility ("Holman"). Plaintiff was transported to South Baldwin Hospital for evaluation and sutures. He claims, upon returning to Holman, he was denied medical attention, including being placed on the hospital ward and denial of x-rays and evaluations by a doctor. Plaintiff claims his wounds were painful and became infected due to the lack of adequate medical treatment. Plaintiff requests a declaration of liability, as well as injunctive and monetary relief for the alleged unconstitutional actions of the defendants.

Defendants have filed Answers (Docs. 18, 35) and Special Reports (Docs. 19, 36) which have been converted into Motions for Summary Judgment (Doc. 48) and to which Plaintiff Ford has responded (Doc. 49). The motions have been fully briefed and are ripe for consideration.

**II.     Summary Judgment Standard.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id.* In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version

3

of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[2]

### III.  Discussion.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-51 (11th Cir. 2012) (unpublished) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)).  The parties do not dispute that Defendants, employed as wardens and a nurse for the State of Alabama, were acting under the color of state law at the time of the complained of incident.  Thus, the Court must determine if Defendants have established that there are no genuine facts with respect to Plaintiff's Eighth Amendment claims.

### A. Official Capacity Claims.

It is unclear from Plaintiff's complaint if he is suing the defendants in their official or individual capacities.  To the extent that Plaintiff has sued each Defendant in his or her official capacity, the Defendants are immune from suit.  "Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) (citation omitted); *see*

---

[2] "Unpublished opinions are not considered binding precedent but may be cited as persuasive authority." 11th Cir. R. 36-2.

*also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual.") (citation omitted). As a practical matter, then, Plaintiff's § 1983 claims against Defendants in their official capacities functionally reduce to § 1983 claims against the State itself.

The Eleventh Amendment protects Defendants in their official capacities from Plaintiff's claims. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). In addition, "a state agency[] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). To the extent that Plaintiff has asserted claims against the correctional Defendants in their official capacities, those claims are dismissed.

**B. Eighth Amendment Claims.**

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment

prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1972) (Eighth Amendment is applicable to the states through the Fourteenth Amendment).

To prevail on an Eighth Amendment claim, an inmate must make both an objective and a subjective showing. In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983. To prevail on constitutional claims like the ones asserted by Plaintiff, he must prove that there was "a substantial risk of serious harm," that the defendant was subjectively deliberately indifferent to that risk, and causation. *Hale*, 50 F.3d at 1582; *see also Farmer*, 511 U.S. at 832-34. In defining "deliberate indifference," the Supreme Court has stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993). . . .It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Farmer*, 511 U.S. at 836. Thus, the Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id*. at 839-40. Under this test, there is no liability for "an official's failure to

alleviate a significant risk that he should have perceived but did not . . . ." *Id*. at 838. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

**<u>Prisoner Safety</u>**

Plaintiff alleges there was no guard present when he was attacked in C-Dorm on January 16, 2018. Plaintiff alleges he was stabbed six times. Plaintiff alleges that Defendant Mitchell subjected him to cruel and unusual punishment in that he failed to protect him from the attack by failing to provide adequate security and safe living conditions.

Plaintiff is required to first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning defendants' conduct "shocks the conscience," *Lumley v. City of Dade City, Fla*., 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, he must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). However, the Eleventh Circuit has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga*., 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act

constitutes deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) (holding that unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy). An "official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

The Defendants maintain that "several procedures are in place to help lessen the incident such as stabbing," including frequent unannounced searches of inmate's person, living quarters and other areas of the institution. (Doc. 36-6 at 1). All officers are further required to conduct five random searches of the inmates and their personal property and living area, daily. And, monthly area searches of the institution are also conducted (the times and patterns of which vary). Defendants further affirm that at the time of the incident of this complaint, two correctional officers and a supervisory were assigned as rovers in the general population dorms (which includes C-Dorm), but "they can only rover one dorm at a time." (*Id*. at 2).

Simply put, the record is devoid of evidence that Plaintiff identified any specific threat of harm to a supervisory defendant on or prior to the incident date. *See e.g., Chatham v. Adcock,* 334 F. App'x 281, 293-94 (11th Cir. 2009) (where no "specific serious threat" from inmate assailant was report to jail official prior to attack, summary judgment in favor of defendants was appropriate); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (vague allegations of "problems" with another inmate are insufficient to

8

establish that defendant officers were aware of a specific risk of serious harm); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[T]he allegations of [plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [a fellow inmate].").

Without knowledge of a specific threat of harm (that is, enough details to conclude that a 'strong likelihood' of injury exists, not a 'mere possibility' of harm, e.*g., Brooks v. Powel*l, 800 F.3d 1295, 1301 (11th Cir. 2015)), the supervisory defendants cannot be held liable for failing to protect Plaintiff from the inmate attack. This stringent standard was recently examined and upheld by the Eleventh Circuit in *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019) (discussing "[t]he unfortunate reality [] that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." (internal quotation and citation omitted)).

In *Marbury*, the Court confirmed the necessity of showing knowledge of a specific threat of harm, rather "than a generalized awareness of risk", in order to make out a deliberate indifference claim. The Court concluded defendant officers were not deliberately indifferent to the plaintiff's safety, despite that the plaintiff repeatedly asked to be transferred to the segregation unit because he was concerned about a general lack of safety in his cellblock (where he witnessed 15 inmate-on-inmate stabbings in approximately 6 months). It is undisputed in this action, Plaintiff never informed anyone of an increased risk of fear of other inmates either verbally or in writing. In fact, the record confirms that neither Plaintiff nor Defendants were aware of a risk of harm to Plaintiff prior to the attack, nor did they know the identity of the inmate assailant at the time of the

incident. The attack can only be described as sudden or a surprise. The record further evidences that once prison staff was aware of the incident, steps were taken to remove Plaintiff from the scene and administer medical attention to Plaintiff. (Doc. 36-2).

The Eleventh Circuit recognizes that the "unjustified constant and unreasonable exposure to violence" violates the Eighth Amendment, *LaMarca*, 995 F.2d at 1535, and inmates have a constitutional right to protection from the constant threat of physical assault from other inmates. *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). It is incumbent on the plaintiff to make an evidentiary showing, however, that a defendant "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence" and "knowingly or recklessly 'disregard[ed] the risk [of harm] by failing to take reasonable measures to abate it,'" *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 848), as "merely negligent failure to protect an inmate from attack does not justify liability under § 1983 . . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. Thus, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Hale*, 50 F.3d at 1583 (internal quotation omitted).

Plaintiff has failed to produce any evidence that the Defendants had any knowledge that he was in danger from any of his fellow inmates. The record is void of evidence that the attack was a result of inadequate security or failure to protect since

there is no allegation by Plaintiff that he ever alerted officers of a fear of fellow inmates nor has he alleged facts indicating the existence of a constant threat of violence in C-Dorm. Following the Circuit precedent, the Court concludes that Plaintiff's allegations are completely lacking in details sufficient to show that the supervisory defendants were aware that he faced a substantial risk of serious harm from inmates at Holman.

**<u>Inadequate Medical Care</u>**

Plaintiff also alleges that the Defendants were deliberately indifferent to his medical needs following the stabbing incident on January 16, 2018. Deliberate indifference to an inmate's serious medical need violates the Eight Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). However, not all denial of medical treatment equates to a constitutional violation. *Id*. at 105. To establish deliberate indifference to a medical need, a plaintiff must allege facts to need the objective and subjective prongs discussed previously. That is, first, the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr*., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 n.9 (2002). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted). Second, a plaintiff must satisfy the subjective requirement of an Eighth Amendment denial of medical care claim by demonstrating "deliberate indifference" to a

serious medical need, that is: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

For purposes of this motion, the Court assumes that Plaintiff's sustained stab wounds from the assault are considered a serious medical need. Thus, in order to establish a constitutional claim Plaintiff must show that Defendants acted wantonly, with deliberate indifference to his serious medical needs, *see Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); however, Plaintiff fails to show that the medical treatment he received was so grossly inadequate "as to amount to no care at all." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause.").

Plaintiff's claim is simply belied by the record. Indeed, the record confirms that Plaintiff promptly received medical treatment for his stab wounds, including transport to a local hospital for sutures. (Doc. 36-9 at 8). The record confirms that Plaintiff received pain medication both immediately following the incident and upon his subsequent request after his sutures were removed. (*Id*. at 1, 5, 10-12). Furthermore, the record confirms that the sutures were removed on January 26, 2018, as prescribed, and the nursing notes indicate that there were no signs of infection and the wounds were healed. (*Id*. at 3; Doc.

19-1 at 12). On January 26, 2018, when examined for complaints of mouth pain and pain when chewing, Plaintiff was prescribed Ensure for another week and Tylenol for another two weeks. (Doc. 19-1 at 15). On February 18, 2018, Plaintiff signed a Release of Responsibility form, indicating "no sick call needed" and "sutures removed". (Doc. 36-9 at 2). Notably, on March 13, 2018, Plaintiff was again examined for complaints of mouth pain and pain when chewing and a visible hole was observed in Plaintiff's tooth, for which Motrin was prescribed and a dental referral was made. (Doc. 19-1 at 22).

Additionally, Plaintiff's claim that he was refused an x-ray falls well short of establishing a constitutional violation. "[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107. And, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 105-06. Furthermore, the mere fact that Plaintiff may disagree with the efficacy of the treatment, simply prefer a different course of treatment, or prefer a different medical practitioner does not state a valid claim of medical mistreatment under the Eighth Amendment. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment). "When a prison

inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop*, 871 F.2d at 1035. In this action, Plaintiff fails to show that the medical treatment he received was so grossly inadequate "as to amount to no care at all." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); *Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause.").

Based on the current record before the Court and viewing the record in the light most favorable to the non-moving party, *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018), the undersigned concludes that Plaintiff fails to state a constitutional violation against these Defendants, and recommends that summary judgment be GRANTED as to Plaintiff's claim that Defendants were deliberately indifferent to his medical needs.

**Transfer to Segregation**

It is undisputed that Plaintiff was placed in the segregation unit following the stabbing incident. Plaintiff alleges he asked Defendant Stewart, on January 24, 2018, to move him from the segregation unit to another prison because he had an unknown enemy at Holman or to move him to the hospital ward due to the pain he was experiencing from the stabbing; both requests were denied by Defendant Stewart.

The Constitution does not provide a prisoner a right to be incarcerated in a particular facility. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451

(1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison. . . [even though] the degree of confinement in one prison may be quite different from that in another. . . . Neither . . . does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."); see Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Plaintiff makes no allegations that his confinement in administrative segregation posed an atypical hardship relative to the incident of ordinary prison life, Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), and thus fails to establish a constitutional violation.

Plaintiff's desire to be confined in an enemy-free institution also fails to rise to a constitutional violation. Indeed, the single-man cell placement in the segregation unit, for which Plaintiff complains, afforded security beyond that of a general population inmate. Accordingly, the Court finds that plaintiff has failed to state a claim upon which relief may be granted under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832, 843, 114 S. Ct. 1970, 1976, 1982, 128 L. Ed. 2d 811 (1994) (finding that the Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates[,]" (citation omitted), and that a violation only occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate).

Furthermore, Plaintiff has failed to show that Defendant Stewart acted with deliberate indifference in failing to move him to the hospital ward. As previously discussed, plaintiff received adequate medical care immediately following the stabbing incident and while housed in the segregation unit. The record evidences that he was able to submit sick call requests, that he was evaluated for each sick call request, and received treatment (including medication) upon each sick call request. The record further confirms that the sutures were removed at the appropriate time, that the wounds were healed, and no infection was observed. Plaintiff has failed to carry his burden of establishing deliberate indifference to a serious medical need or connecting a defendant's actions to any injury.

Accordingly, the undersigned recommends that summary judgment be GRANTED in favor of Defendants, and that the claims against them be dismissed.

### C. Declaratory and Injunctive Relief.

Plaintiff's claims relate solely to the conditions and/or treatment received at Holman. During the pendency of this action, however, Plaintiff has been transferred from Holman. (*See* Docs. 11-13, 32, 39, 46). The transfer from Holman moots Plaintiff's request for any injunctive or declaratory relief.

The law is settled that a § 1983 action filed by a prisoner seeking injunctive relief becomes moot one he is transferred or released from the facility where the cause of action arose. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (Plaintiff "was transferred to another facility shortly after his complaint was filed. . . . At that point, his claims for injunctive and declaratory relief relating to the conditions of his administrative segregation at the West Jefferson facility no longer presented a case or controversy."). Additionally, there is no evidence that Plaintiff will be returning to Holman; therefore, there

is no evidence of "any continuing, present injury or real and immediate threat of repeated injury" to Plaintiff from these Defendants. See *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985); *see also, Castaneira v. Perdue*, 2010 U.S. Dist. LEXIS 130384, 2010 WL 5115193, *2 (N.D. Ga. December 09, 2010) ("The remote possibility that a future injury may happen is not sufficient to satisfy the actual controversy requirement for declaratory judgments.") (internal citation omitted). Likewise, Plaintiff has failed to establish, or even assert, that he is likely to be injured in the future, making declaratory relief unavailable to Plaintiff, as he is no longer incarcerated at Holman.

Accordingly, the sought declaratory and injunctive relief against Defendants is moot.

**IV. Conclusion.**

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED,** and that Plaintiff's action against Defendants be **DISMISSED** with prejudice.

The instructions below contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a

report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **ORDERED** this **20th day of October, 2020**

                                                   **s/P. Bradley Murray**
                                                   **UNITED STATES MAGISTRATE JUDGE**